### In re TRAVEL AGENCY COMMISSION ANTITRUST LITIGATION.

#### M.D.L. 1058.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 23, 1995.

Michael D. Hausfeld, Jerry S. Cohen, Daniel A. Small, Beth A. Andreozzi, Cohen Milstein Hausfeld & Toll, Washington, DC, Arnold Levin, Howard J. Sedran, Levin Fishbein Sedran & Berman, Philadelphia, PA, Nicholas E. Chimicles, Ira Neil Richards, Chimicles Jacobson & Tikellis, Mark C. Rifkin, Greenfield & Rifkin, Haverford, PA, Dennis Stewart, Sharon Maier, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Samuel D. Heins, Kent M. Williams, Stacey L. Mills, Heins Mills & Olson, Minneapolis, MN, Fred T. Isquith, Wolf, Haldenstein, Alder, Freeman & Herz, New York City, for Travel Network, Ltd., Debra Bermingham, Julie Hayes, Service, Travel & Tours Corp., Marie Jose Carlson, Center Travel of Bensalem, Inc., Grant Street International, Ltd., All About Travel Inc., Horsham Travel, Inc., Beekmans Vdo, Inc., Rona Travel Agency, Inc., Lacienega Travel, Inc., Broadaxe Globe Travel, Inc., Travel Dimension, Inc., Management Travel Consultants, Inc., Departure Travel Inc., Martin's Travel & Tours, Inc., Gateway Travel of Lake Arbor, Inc., Travel Leader Group of Colorado, Ltd., Mark IV Travel, Inc., Kuhn & Corbett, Inc., Santa Barbara Travel Bureau, ASTA.

Mark David Savin, John Dwyer French, Faegre & Benson, Minneapolis, MN, Robert E. Cooper, Chad S. Hummel, Peter Sullivan, Jon G. Shepherd, Gibson Dunn & Crutcher, Los Angeles, CA, for American Airlines, Inc.

Leon R. Goodrich, Bradley Grayson Clary, Oppenheimer Wolff & Donnelly, St. Paul, MN, Mark Leddy, David I. Gelfand, Mark W. Nelson, Michael P. Shea, Cleary Gottlieb Steen & Hamilton, Washington, DC, for Delta Air Lines, Inc.

Thomas W. Tinkham, Carol Alice Peterson, Dorsey & Whitney, Minneapolis, MN, Parker C. Folse, III, M. Katherine Sammons, Charles R. Eskridge, Susman Godfrey, Houston, TX, for Northwest Airlines, Inc.

George Orlyn Ludcke, Best & Flanagan, Timothy Desmond Kelly, Kelly & Berens, Minneapolis, MN, Andrew S. Marovitz, Mayer Brown & Platt, Chicago, IL, Richard J. Favretto, Mark W. Ryan, Mayer Brown & Platt, Washington, DC, Stephen P. Sawyer, J. Craig Busey, Busey & Sawyer, Elk Grove, IL, for United Air Lines, Inc.

Deborah J. Palmer, Elliot S. Kaplan, Robins Kaplan Miller & Ciresi, Minneapolis, MN, Robert C. Heim, George G. Gordon, Allison S. Lapat, Jennifer Clark, Dechert Price & Rhoads, Philadelphia, PA, Jennifer R. Clarke, for USAir, Inc.

Richard J. Wertheimer, Paul T. Denis, Mark A. Merva, Arnold & Porter, Washington, DC, Gerald L. Svoboda, Fabyanske Svoboda Westra Davis & Hart, Minneapolis, MN, for Continental Airlines, Inc.

David Fulton Herr, Alain M. Baudry, Maslon Edelman Borman & Brand, Minneapolis, MN, Thomas W. Rhodes, Smith Gambrell & Russell, Atlanta, GA, Mary McGuire Voog, Trans World Airline, St. Louis, MO, for Trans World Airlines, Inc.

Anne K. Bingaman, Joel I. Klein, Roger W. Fones, U.S. Dept. of Justice, Transportation Energy & Agriculture, Washington, DC, amicus U.S.

Richard T. Thomson, Lapp Laurie Libra Abramson & Thomson, Minneapolis, MN, Tony G. Power, Tony G. Powers, Rogers & Hardin, Atlanta, GA, for Worldspan, L.P.

Francis O. Scarpulla, Scarpulla Law Office, San Francisco, CA, Stacey L. Mills, Heins Mills & Olson, Minneapolis, MN, William Bernstein, Joseph R. Saveri, Jacqueline E. Mottek, Lieff Cabraser Heimann & Bernstein, Alexander Anolik, Mitchell Blumenthal, Wayne Caldwell, Anolik Law Office, San Francisco, CA, for Management Travel Consultants, Inc.

Edwin Lee Sisam, Gregg Edward Isaacson, Dorothy J. Buhr, Sisam & Assoc, Minneapolis, MN, Larry Daniel Drury, Drury Law Office, Chicago, IL, for Travel Unlimited, Inc.

## ORDER

ROSENBAUM, District Judge.

This case arises from travel agent commission revisions instituted during February, 1995. This change in commissions for domestic air travel tickets was imposed by seven major American commercial airlines.[1]

These class actions, now consolidated for pretrial purposes by the Panel on MultiDistrict Litigation ("M.D.L. Panel"), were commenced by various travel agencies and travel agent organizations shortly after the revised commissions were instituted.[2]

The matter is now before the Court on cross-motions. Plaintiffs move for a preliminary injunction, pursuant to Rule 65; defendants move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").[3] The Court heard oral argument on July 7, 1995. Based on the files, records, and proceedings herein, and for the reasons stated below, all motions are denied.

### I.  Factual Background

On February 9, 1995, Delta Airlines announced that it was revising its airline travel agents' commission structure, effective the following day. Within 144 hours, the other six defendants matched Delta.

Prior to Delta's announcement, travel agents selling domestic airline tickets, miscellaneous charge orders ("MCOs"), and prepaid ticket advances ("PTAs"), received 10% of the fare charged as their commission.[4] According to plaintiffs, the airlines have generally paid this commission since 1960. The revised schedule reduced the commission for one-way tickets to 10% of the ticket price, to a maximum of $25.00; for round trip tickets the commission was reduced to 10% of the ticket price, to a maximum of $50.00. Plaintiffs' desire to eliminate these newly-imposed "caps" is at the base of their suit.

Plaintiffs claim the swift and uniform adoption of commission "caps" resulted from defendants' unlawful conspiracy to fix prices to the detriment of the plaintiff class. Plaintiffs argue that each defendant's identical conduct does not make economic sense. They assert

1. Defendants are Delta Airlines, Inc., American Airlines, Inc., Northwest Airlines, Inc., United Airlines, Inc., USAir, Inc., Continental Airlines, Inc., and Trans World Airlines, Inc. Together, the defendants carry approximately 85% of America's domestic air travelers.

2. By Order, dated June 1, 1995, the M.D.L. Panel designated this Court to conduct pretrial proceedings, pursuant to 28 U.S.C. § 1407.

3. Defendant Trans World Airlines does not seek summary judgment, as it has settled with the plaintiff class. On August 16, 1995, this Court granted final approval of the settlement.

4. Although the record is not completely developed, the Court is aware that "override payments" and other considerations are provided to certain members of the plaintiff class.

that, in an open and competitive commission environment, an airline which declined to cut commissions would benefit because travel agents would favor higher paying airlines.[5] Plaintiffs argue that Delta Airlines played the lead role in this unlawful, anticompetitive decision by signaling to the other air carriers that a revision in commissions would occur in early 1995.

Defendants deny any conspiratorial or anticompetitive activity. They argue that the commission revisions were independently adopted, as each individual airline determined that a commission cut would result in tremendous savings.[6] Defendants point out that their employees—pilots, flight attendants, customer service representatives, mechanics, and others—have all made wage concessions to assist the industry. It is their position that the reduced commissions are another step in cost control. Defendants further respond that airlines operate in an oligopolistic market, with widely disseminated information. Under such conditions, they argue that rapid price coalescence is an economic inevitability. They claim these factors led to the swift adoption of the revisions.

Plaintiffs' Amended Complaint asserts violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Plaintiffs seek an injunction requesting the reinstatement of the status quo ante and reimposing 10% commissions, or, at least, a competitive commission structure until further order.

Defendants seek summary judgment dismissing the case, claiming plaintiffs have failed to produce triable evidence that any conspiracy existed. Defendants assert that plaintiffs have made only a meager assertion of a Delta-initiated and signaled conspiracy.

Defendants claim that the meetings, speeches, and public information transfers occurring the year before the commission revisions were random events which are not evidence of a conspiracy. The airlines argue there was no secret agreement to collectively revise commissions—Delta simply announced its intention to examine its entire cost structure in April, 1994.[7] It is defendants' position that when Delta recast its commission structure in February, 1995, the other airlines engaged in legal conscious parallelism and made independent cost-cutting decisions.

## II. *Preliminary Injunction*

Plaintiffs seek class-wide injunctive relief reinstating the pre-February, 1995, status quo ante. Plaintiffs claim immediate and irreparable injury has resulted because a majority of them are small-volume, thinly-capitalized, ticket sellers. They assert an illegal deprivation of present earnings and an erosion of business goodwill. Plaintiffs claim they are being pushed into bankruptcy and now find their businesses unsalable. The defendants do not deny that travel agent commissions will decline as a result of the revised commission schedules. They do, however, deny that earnings cuts are contrary to law and that plaintiffs have shown present injury to justify this Court's injunction.

■ In the Eighth Circuit, a court must examine the following four criteria to determine whether to issue a preliminary injunction:

1. The threat of irreparable harm to plaintiffs;

---

5. Plaintiffs note that, during the late 1980s, American Airlines and United Airlines made separate unilateral commission cuts. Competitor airlines did not follow, and travel agents' customers apparently patronized airlines which continued to pay the 10% commission. Both American Airlines and United Airlines abandoned their commission revision programs shortly thereafter. Extrapolating from this evidence, plaintiffs suggest that defendants, this time, conspired to ensure all airlines would cut commissions.

6. The airlines estimate, and for these purposes the plaintiffs have not contested, that they will

realize substantial savings as a result of the revised commissions. For example, Northwest Airlines estimates an annual savings of $50–58 million. *See* Northwest Memorandum in Support of Summary Judgment, p. 2 and n. 3. American Airlines estimates a $150 million annual savings. *See* American Airlines Memorandum in Support of Motion for Summary Judgment, p. 1.

7. The announcement was purportedly part of Delta's 7.5 Leadership Program, an effort to reduce travel costs to 7.5 cents per mile.

2. The balance between that harm and any injury that the temporary relief would inflict on other parties;

3. Whether plaintiff has demonstrated probable success on the merits; and

4. The public interest.

*Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981). Probable success on the merits is frequently noted as the most important factor. *S & M Constructors, Inc.,* 959 F.2d 97, 98 (8th Cir. 1992).

▮▮ A preliminary injunction is an extraordinary remedy, and the moving party has the burden of showing its necessity. *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 667 (D.Minn.1991). As recognized by one federal district court, an injunction cannot issue based on imagined consequences of an alleged wrong. Instead, there must be a showing of imminent irreparable injury. *USA Network v. Jones Intercable, Inc.,* 704 F.Supp. 488, 491 (S.D.N.Y.1989).

▮ The Court finds, on the basis of the evidence adduced to this point, that plaintiffs have failed to demonstrate irreparable harm. Plaintiffs have made no showing that their injuries are not compensable in dollars. Plaintiffs have offered neither anecdotal nor admissible statistical evidence that travel agencies are failing as a result of the commission reductions. Further, plaintiffs have not offered supportable evidence as to the percentage of revenue loss, if any, incurred as a result of the commission cuts. Plaintiffs have not shown, other than by the most hypothetical opinion, that they have an immediate probability of imminent bankruptcy, or that their businesses have been rendered unsalable. The first *Dataphase* factor favors denial of a preliminary injunction.

The second factor, the harm shown by the movant balanced against the harm inflicted on the non-moving party, also counsels against the injunction. It is beyond question that defendants have lost enormous sums of money in the recent past. The now-unregulated airline industry is a hard business. The Court observes that it is difficult to travel on Western, Braniff, Allegheny, Texas, and Eastern airlines these days. There is no dispute that airline cost and fuel charges are the two largest costs of goods sold in the industry. In large part, these costs are inelastic. The third largest cost item is "distribution"—the industry term for the cost of ticket sales. This cost has been reduced by the challenged commission revisions. Even plaintiffs agree this cost is properly subject to some control.

The Court finds insufficient evidence to compel the reimposition of the previous commission structure. On this record, the Court declines to order defendants to disgorge the sums already realized from the reduced cost of tickets sold. The immediate loss of cash-in-hand funds, balanced against the unsupported claim of irreparable harm to the plaintiffs, would inflict a positive injury on the defendants. The second *Dataphase* factor favors denial of a preliminary injunction.

The third *Dataphase* factor is the probability of success on the merits. The probability of success is discussed in the Court's analysis of the defendants' motions for summary judgment, below. For *Dataphase* purposes, however, the Court determines this factor as neutral.

▮ Finally, a court must consider the public interest. There is a strong public interest in a vibrant travel agency industry—an industry largely composed of small businesses. At the same time, there is a strong public interest in the multi-billion dollar airline industry—an industry which now competes in an unregulated marketplace. And the public is interested in low prices for air travel.

The peculiar contours of this dispute, however, make it one in which the public interest is neutral. A $100 ticket still costs the consumer $100. Either the carrier or the travel agent gets a bigger piece of the $100 bill, but the consumer's cost is the same. This is an "inside the circle" fight. Under these circumstances, and in the absence of a direct cost to the consumer, the public does not yet have a demonstrated interest.

Balancing the *Dataphase* factors, the irreparable harm and probability of success components favor denial of an injunction. The other two *Dataphase* factors are neutral.

On this basis, the Court finds it proper to deny plaintiffs' motion for a preliminary injunction.[8]

### III. *Summary Judgment*

Each defendant strenuously argues that it made an entirely independent decision to revise its entire domestic ticket commission structure. Each defendant, except Delta—which made the first decision—assures the Court it did not conspire when it unilaterally decided to impose this identical commission after Delta's stunning announcement.

Each defendant reminds the Court that price coalescence is a natural and inevitable consequence of a competitive, albeit oligopolistic, industry. After Delta's move, each defendant acknowledged nonconspiratorial "conscious parallelism" in seeking to cut its own costs. Quite simply, no defendant was willing to remain on the sideline while a competitor gained a cost advantage.

The plaintiffs are unconvinced. They argue that defendants participated in a knowing conspiracy involving public speeches, electronic communications, subtle press releases, private dinners for airline executives and attendant antitrust counsel, and industry-bonding meetings at the Super Bowl and other locations. Plaintiffs do not deny that the airline industry needs to control costs, but argue it was not happenstance that each defendant, within days, "stumbled" onto the identical price structure chosen by their confederates. Plaintiffs seem to acknowledge the statistical probability that a cube of ice can appear in a vat of boiling water, but doubt they have seen one yet.

■ It is well-established that summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This principle holds for antitrust claims, as it does for other civil theories.

■ At oral argument, the defendants strongly suggested that *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) requires plaintiffs to meet a heightened standard of proof to resist a motion for summary judgment. They argued that, in the antitrust context, plaintiffs must show, perhaps not to a preponderance of the evidence, but to some standard higher than a simple triable question of fact, that the claimed conspiracy existed.[9] The Court rejects this view.

As explained by Justice Blackmun:

> The [Supreme] Court's requirement in *Matsushita* that the plaintiffs' claims make economic sense did not introduce a special burden on plaintiffs facing summary judgment in antitrust cases. The Court did not hold that if the moving party enunciates *any* economic theory supporting its behavior, regardless of its accuracy in reflecting the actual market, it is entitled to summary judgment. *Matsushita* demands only that the nonmoving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated, in that decision.

*Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 468, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) (emphasis original).

It does not appear to this Court that the summary judgment standard set forth in *Cel-*

---

**8.** Having decided against issuance of an injunction, questions of the type, amount, or structure of any bond are moot. *See* Fed.R.Civ.P. 65(c).

**9.** Defendants argue that *Willman v. Heartland Hosp. East,* 34 F.3d 605 (8th Cir.1994) imposes the higher standard of proof they seek. They are incorrect. *Willman* merely restates the principles explicated in *Matsushita* and recalls the established rule that "Conduct that is as consistent with a lawful motive as with an unlawful

motive, standing alone, does not support the inference of an antitrust conspiracy." This statement is neither surprising, nor does it compel the Court to any different determination than that set forth, *infra.* Finally, *Willman* is a case presenting the question whether a hospital and its medical staff engaged in a Section 1 antitrust conspiracy against a doctor whose medical privileges were revoked. *Willman* is plainly distinguishable on its facts.

*otex* and *Liberty Lobby* is transformed in an antitrust action. It is true that:

> [A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 [Sherman Act] case.... To survive a motion for summary judgment ... a plaintiff seeking damages for a violation of § 1 must present evidence that tends to exclude the possibility that the alleged conspirators acted independently.

*Health Care Equalization Comm. of the Iowa Chiropractic Society v. Iowa Medical Society et al.*, 851 F.2d 1020, 1032 (8th Cir. 1988) (internal quotation omitted). These legal principles do not compel the result defendants seek.

The Court determines that, when fairly viewed, the plaintiffs' evidence permits two conclusions. The first conclusion is clear: If the defendants did reach a direct conspiratorial agreement, they have declined to acknowledge it in depositions under oath. The second conclusion is more complex and much disputed by defendants: Plaintiffs have identified and focused on a set of occurrences, speeches, meetings, events, official and unofficial corporate utterances, and conferences at which information was exchanged. It is their view that this exchange of information was not haphazard, but was purposefully designed to communicate to a knowing group of similarly interested parties this message: "We, Delta Airlines, will take the lead in cutting airline travel agent commissions. We will do so shortly, and if all airlines do the same thing, these commission changes will stick and we will all make more money." Plaintiffs argue that the reply message was similarly sent and received: "Go ahead, you lead. We will follow in lockstep so as not to be susceptible to a divide-and-conquer response by the travel agency industry."

Defendants deny that there is sufficient evidence to convince a jury that these messages were sent and received. The defendants may be correct. But defendants confuse a triable issue with a winning case.

 The net teaching of *Celotex, Liberty Lobby, Matsushita, Eastman Kodak,* and *Health Care Equalization,* is that summary judgment is to be granted in favor of defendants in an antitrust case if plaintiffs' evidence is insufficient to present a triable case showing that the accused economic occurrence resulted from other than independent action. If plaintiffs demonstrate the existence of a triable issue, the motion for summary judgment must be denied. In this Court's view, plaintiffs have come forward with sufficient credible evidence from which reasonable inferences can be drawn to support their anticompetitive theory. As a result, defendants' motions for summary judgment are denied.

Based on the files, records, and proceedings herein, IT IS ORDERED that:

1. Plaintiffs' motion for a preliminary injunction is denied.

2. Defendants' motions for summary judgment are denied.