**In re AIRLINE TICKET COMMISSION
ANTITRUST LITIGATION.**

4–95–MDL–1058.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 28, 1997.

Thomas W. Tinkham, Dorsey & Whitney, Minneapolis, MN, Samuel D. Heins, Heins Mills & Olson, Minneapolis, MN, for Airline Ticket Commission Antitrust Litigation.

## ORDER

ROSENBAUM, District Judge.

Counsel for the plaintiff class and counsel for each defendant airline seek final approval of their proposed settlements, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). On September 3 and September 9, 1996, the Court preliminarily approved the parties' proposed settlements and directed that notice be given to the class. After service of the notice, class members filed a number of responses and objections to the proposed settlements. The Court conducted a fairness hearing on November 15, 1996.

### I. *Background*

In February, 1995, plaintiffs, as representatives of a nationwide class of travel agents and agencies, filed suit against the seven major domestic air carriers—Delta Air Lines, American Airlines, Northwest Airlines, United Air Lines, USAir, Continental Airlines, and Trans World Airlines.[1] The plaintiff class claimed defendants had conspired to fix airline travel agent commissions by uniformly imposing a "commission cap." This new commission structure limited travel agents' and agencies' ticket commissions to maximums of $25.00 on one-way tickets and $50.00 on round-trip tickets.

In June, 1995, plaintiffs filed a motion for preliminary injunction, and defendants filed cross motions for summary judgment. The Court denied all motions in August, 1995. *See In re Travel Agency Comm'n Antitrust Litig.*, 898 F.Supp. 685 (D.Minn.1995). In so ruling, the Court found plaintiffs had presented sufficient evidence to proceed to trial, but expressed no confidence that such a trial would result in a verdict favorable to the plaintiffs. In this regard, the Court observed:

> Defendants deny that there is sufficient evidence to convince a jury that [conspiratorial] messages were sent and received. The defendants may be correct. But de-

fendants confuse a triable issue with a winning case.

*Id.* at 691.

In June, 1996, defendants again filed motions for summary judgment. The Court denied those motions in August, 1996, finding that genuine issues of material fact remained. *See In re Airline Ticket Comm'n Antitrust Litig.*, No. 4–95–MDL–1058 (D.Minn. Aug. 12, 1996).

Throughout this time, the Court held multiple pre-trial hearings, in person and by telephone, pursuant to Fed.R.Civ.P. 16. In late August, 1996, the Court conducted a charge conference concerning the substantive instructions of law that would govern the case. The Court also reviewed an extensive battery of motions in limine. Trial was set to begin on September 3, 1996.

Also in August, 1996, the Court appointed J. Lawrence Irving, formerly a United States District Judge, as special master for settlement. Judge Irving conducted extensive negotiations with the parties, resulting in a $4,250,000.00 proposed settlement between the plaintiff class and defendant Continental Airlines on August 31, 1996. On September 2, 1996, the plaintiff class and USAir agreed upon a $9,810,000.00 settlement, and on September 3, 1996, the day trial was to commence, the plaintiff class and the remaining four defendants reached a $72,000,000.00 settlement. Each proposed settlement calls for a cash payment in satisfaction of plaintiffs' claims, but leaves the commission caps in place. *See* Stipulation and Agreement of Settlement with Continental Airlines, Inc.; Stipulation and Agreement of Settlement with USAir, Inc.; Stipulation and Agreement of Settlement with American Airlines, Inc., Delta Air Lines, Inc., Northwest Airlines, Inc., and United Air Lines, Inc.

In response to the notice of settlements, 189 individual plaintiff class members filed objections with the Court. Thus, the Court received negative responses from approximately one-half of one percent of the class,

---

**1.** Trans World Airlines ("TWA") and the plaintiff class reached an early settlement in this matter. Under that settlement, TWA retroactively rescinded its commission cap and adopted a "trav-

el agent appreciation program." The Court granted final approval of the TWA settlement, effective August 16, 1995.

which numbers in excess of 34,000 members.[2] At the fairness hearing, the Court heard from three objectors to the above settlements. Two objectors appeared by counsel, and the third, a former travel agency owner, appeared *pro se.*

A number of the objections addressed the dollar amount of the settlement. Others protested that neither the Court nor the parties reimposed the ticket commission structure in place prior to February, 1995. Certain objectors referred to the proposed plan of allocation. One objector, represented by counsel at the hearing, argued that the settlement notice was insufficient. Finally, some class members asked the Court to limit the award of attorneys' fees to counsel for the plaintiff class.

## II.  *Discussion*

A court, in determining whether to approve a class settlement, "must consider whether it is 'fair, reasonable, and adequate.'" *Van Horn v. Trickey,* 840 F.2d 604, 606 (8th Cir.1988) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975)). To determine whether a settlement satisfies these standards, the court must consider:

> the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement.

*Van Horn,* 840 F.2d at 607. Of these factors, the most important is the balance of the settlement terms against the strength of plaintiff's case. *Id.*

Further, although a court must consider the number opposed to a settlement, the court may approve a settlement despite sizable opposition. *Elliott v. Sperry Rand Corp.,* 680 F.2d 1225, 1226–27 (8th Cir.1982). A court may also approve a settlement even when named class members are included among the objectors. *Id.*

### A.  *Objections to the Settlement Terms*

The Court has read and considered each of the objections,[3] and observes a handful of common themes. Having considered these objections, the Court finds them insubstantial. The Court finds the settlements are fair, reasonable, and adequate, and grants them final approval.

The objections are considered and discussed below:

### 1.  *The Settlements Fail to Fully Compensate Travel Agencies for Lost Revenues*

■ The objectors contend the settlements are inadequate because they provide the agents and agencies a lesser sum than their actual revenue loss resulting from the commission caps. This observation, however, does not determine the fairness of the proposed settlements.

A settlement sum is, in virtually every case, less than the claimed loss. A settlement is, necessarily, a compromise between plaintiffs, who did not win their case, and defendants, who did not lose theirs. These settlements, like all others, reflect each side's considered view of the risks of an adverse judgment and the value of buying peace. The Court finds the parties' views in this regard to be reasonable.

Further, the Court recognizes that ticket commissions are not a travel agent's only source of ticket booking revenue. Although commissions make up a substantial portion of an agent's compensation, they are not the

---

**2.**  The Court notes that notice was provided electronically to the class. Such notice was unusually effective with this industry, which conducts much of its business by electronic network. The industry press also extensively reported the proposed settlements and their terms, through both articles and letters to the editors. Many of these articles and letters urged class members to write to the Court and class counsel to object to the proposed settlements. Notwithstanding such urging, the Court received fewer than 190 objections from a class of more than 34,000. By any objective measure, this is a very low objection rate from a generally well informed and sophisticated class.

**3.**  The Court notes that one objector, David de L'Arbre, is also a named class member. The Court considers Mr. de L'Arbre's objection, but accords it no special deference based merely on Mr. de L'Arbre's status as a class representative. *See Elliott,* 680 F.2d at 1226–27.

agent's exclusive income source. Travel agents receive travel and ticketing concessions, as well as override payments and other such incentives. The Court determined, preliminarily, that such non-commission sums were irrelevant to a damages determination, but the defendants repeatedly averred, and sought to prove at trial, that such non-commission sums were, in fact, relevant in calculating plaintiffs' damages.

### 2. *The Settlements Ignore Evidence the Court Found Sufficient to Preclude Summary Judgment*

The objectors contend plaintiffs' class counsel underestimated the strength of their case and, as a result, accepted an insufficient settlement sum. The objectors base their argument on this Court's denial of defendants' motions for summary judgment.

This objection reflects a misunderstanding of the nature of the Court's Orders of August 23, 1995, and August 12, 1996. *See In re Travel Agency Comm'n Antitrust Litig.,* 898 F.Supp. 685 (D.Minn.1995); *In re Airline Ticket Comm'n Antitrust Litig.,* No. 4–95–MDL–1058 (D.Minn. Aug. 12, 1996). The defendants' motions for summary judgment asked the Court to decide whether, as a matter of law, the airlines must prevail, obviating the need for trial. The objectors do not appreciate that, although the Court denied defendants' motions, it did not thereby determine that the plaintiffs had a winning case. *See In re Travel Agency Comm'n Antitrust Litig.,* 898 F.Supp. at 691.

Indeed, based on the evidence submitted, the Court finds plaintiffs' counsel reasonably assessed the strength of their case. Of course, while fulfilling its duty to determine the propriety of this settlement, the Court "need not resolve all of the underlying disputes." *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1178 (8th Cir.1995), *cert. denied sub nom. Crehan v. DeBoer,* — U.S. —, 116 S.Ct. 1544, 134 L.Ed.2d 648 (1996). That said, however, the Court observes that plaintiffs' case was entirely circumstantial.

Depositions of almost 250 airline insiders, airline executives, industry observers, and travel news reporters revealed no "smoking gun" to show actual collusive behavior on the part of the airlines. Many objectors fervent-ly believed, and urged upon the Court, that it was self-evident the airlines, having set their commissions at identical levels within a very short period, must have conspired to do so. Strongly held beliefs, however, do not prove the thing that is believed.

There is no question that the airlines each imposed identical commission caps during a six-day period in 1995. This simple fact, however, is countered by a powerful body of generally accepted economic theory suggesting that such a coalescence inevitably results from market pressures and is not evidence of antitrust activity. Rather, in an oligopolistic market, such as that in which the airlines operate, rapid price coalescence is the norm and is not, in itself, illegal. *See E.I. Du Pont de Nemours & Co. v. FTC,* 729 F.2d 128, 139 (2d Cir.1984) ("The mere existence of an oligopolistic market structure in which a small group of manufacturers engage in consciously parallel pricing of an identical product does not violate the antitrust laws.").

These market realities, coupled with plaintiffs' lack of direct evidence of collusion, left the chance of a plaintiffs' verdict in serious doubt. As such, the Court finds the balance between plaintiffs' case weighed against the terms of the settlement strongly favors settlement.

### 3. *The Settlements Fail to Rescind the Commission Caps*

■ The objectors argue the settlements are unfair because they leave the commission caps in place. These objectors point to the valuable service they perform for both the airlines and the traveling public. They complain they are unable to make money selling tickets at commission rates below 10 percent.

The Court does not doubt that travel agents perform a valuable service. A valuable service, however, does not mandate a particular compensation scheme, nor does it assure that the compensation will be "fair" in the eyes of its practitioners. Accordingly, the failure to reinstate the 10 percent commission rate does not render the settlement unfair.

■ Further, the Court considers that reimposition of the 10 percent commission

**284**

rate may, itself, constitute an antitrust violation. Indeed, when plaintiffs and defendant TWA sought approval of their initial settlement proposal, which reset the commission rate at 10 percent between the parties, the United States Department of Justice objected. The Justice Department argued that reimposition of the 10 percent commission, even if for a limited period, constituted an illegal fixed price. The Court need not determine whether an agreement to reinstate the 10 percent commission is illegal, and declines to do so. At the same time, the Court observes that an illegal term would render a class action settlement invalid, "no matter how much the parties, for whatever reason, wanted it." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1384 (8th Cir.1990).

■ In this same regard, a number of objectors argue the Court should order the parties to reinstate the 10 percent commission and eliminate the 1995 caps. The Court, however, lacks the power to do so. A Court is "without authority to require parties to comply with a 'settlement' different from their own agreement." *Id.* at 1388. The Court may only accept or reject a proposed settlement; it may not dictate its terms. *Id.* As such, the Court cannot order, and will not suggest, modifications to the settlement.[4]

#### 4. The Settlement Does Not Answer the Question: Did the Airlines Conspire?

The objectors argue that the settlement fails to achieve one of the central objectives of this lawsuit, that being to prove the defendants conspired to impose the commission caps. The objectors are correct that the settlement does not resolve this question. Unresolved questions are, however, part and parcel of a settlement. *See Grunin*, 513 F.2d at 124.

#### 5. The Settlement Does Not Adequately Punish the Airlines

The objectors stress that the airlines have profited from the commission caps, and that

the proposed settlement amounts to no more than "a slap on the wrist." This argument, however, presupposes that the airlines would have lost at trial. As the Court discussed above, plaintiffs were unable to produce any direct evidence showing an airline conspiracy. Given this dominating defect in plaintiffs' case, the Court finds the proposed settlement to be fair.

#### 6. The Settlement Does Not Assure That Travel Agencies Can Make a Profit

■ The objectors' final argument claims the settlement is unfair because it fails to guarantee that travel agents can earn a profit in the travel industry. As the Court has already recognized, the proposed settlement does not assure the travel agents' livelihood. No resolution of this matter could do so.

The Court observes, as an initial matter, that defendants, and not plaintiffs, could have prevailed at trial. Clearly, an adverse verdict would not guarantee the travel agents a profitable business. Even a favorable verdict, resulting in a substantial dollar recovery, could not assure that any particular compensation structure would remain permanent.

A lawsuit simply cannot assure that a person will be "fairly" remunerated for his or her labors. In the end, therefore, the settlement's inability to assure the travel agents "fair" compensation does not demonstrate the settlement is unfair, unjust, or unreasonable.

#### B. Objections to the Proposed Plan of Allocation

■ A handful of objectors disagree with plaintiff class counsels' proposed plan of allocation of the settlement award. Under the proposed plan, class members would receive a pro rata share of the award based on all domestic ticket sales. The objectors argue that this plan provides a windfall to agents who sell significant numbers of inexpensive

---

4. For the same reason, the Court denies objector Tamalpais Travel's request that the Court enjoin defendants from any discussions concerning commissions paid to travel agents and lift any seals of confidentiality imposed in this matter.

The parties to this settlement did not agree to such terms, and the Court will not impose them. Their absence does not render the settlement unjust or unfair.

tickets not affected by the commission cap. As an alternative, these objectors seek a distribution plan based only on sales of capped-commission tickets. Under this plan, agents would not recover for one-way tickets costing less than $250 or for round-trip tickets costing less than $500.

In an ideal world, this argument would be well taken. This, however, is not such a world, and the variance between the ideal world and this one compels the Court to overrule the objection. Despite its flaws, plaintiff class counsels' proposed plan of allocation is cost-effective, simple, and fundamentally fair. Absent an audit of each travel agent, an unworkable proposal when the class numbers over 34,000, or a consistent on-line airline ticket accounting system, which does not exist in this industry, the objectors' proposed plan is almost impossible to implement. The Court is convinced that the cost of undertaking these steps would be exorbitant and a waste of settlement funds.

Finally, the objectors have failed to show any appreciable difference in individual settlement distributions under either proposed allocation plan. Of course, some travel agencies write low priced tickets unaffected by the commission caps. Such agencies may realize a windfall. Nevertheless, the objectors have made no showing whatsoever that the windfall these agencies receive will materially affect the distribution sum available to the remainder of the class. As such, the Court finds no reason to reject plaintiff class counsels' proposed plan, and declines to do so.[5]

## C. Objections to Adequacy of the Notice of Settlement

■ One objector, Santa Barbara Travel, contends the notice of settlement was deficient because it failed to disclose the effect of the present settlements on that reached with TWA. Plaintiffs' settlement with TWA, approved in August, 1995, contained a "most favored nation" clause. Under this clause, the aggregate settlement award of $86,892,-000.00, before interest, will be diminished by approximately $757,000.00. Santa Barbara Travel argues that failure to notify class members of this reduction violates due process.

To comply with due process, notice of a proposed settlement must "enable[ ] class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known." *Reynolds v. National Football League,* 584 F.2d 280, 285 (8th Cir.1978). Such notice need not be "extensive" nor "remarkably thorough." *DeBoer,* 64 F.3d at 1176. Rather, a settlement notice "may consist of a very general description of the proposed settlement." *Grunin,* 513 F.2d at 122. A settlement notice need not describe the effect of the proposed settlement on another matter not pending before the court. *Reynolds,* 584 F.2d at 285.

Here, the Court finds the notice delivered to the plaintiff class fully complied with due process. Its supposed "failure" to advise class members of the effect of the present settlement on their prior settlement with TWA is virtually without consequence. First, although the present settlement may affect the settlement award negotiated with TWA, this does not speak to the fairness or adequacy of the present settlement. Second, the "most favored nation" clause in the TWA settlement results in only a de minimis reduction in the overall settlement award. Under that clause, the overall award of $86,892,-000.00 will be decreased by approximately $757,000.00, a decline of less than one percent. Accordingly, the Court finds the notice of settlement satisfied the requirements of due process.

## D. Objections to Attorneys' Fees

■ Finally, some objectors criticize class counsels' request for one-third of the settlement sum as attorneys' fees and costs. The Court rejects these objections.

**5.** Although the Court hereby approves plaintiff class counsels' distribution plan, the Court raises, *sua sponte,* the question of a diminution or lapse of settlement sum distributions to particular class members who may have failed to comply with the Court's discovery orders. These matters will be dealt with separately, as set forth more fully in accompanying orders, and do not impact the overall distribution scheme approved herein.

A recovery of one-third of the settlement fund fairly reflects the service and benefit class counsel conferred upon the class. Class counsel rendered their services on a contingent fee basis and have, thus far, received neither payment nor promise of recompense. In addition, they have personally financed this case, incurring expenses exceeding $3 million with no guarantee of an ultimate recovery.[6]

Class counsel labored thousands of hours on this case, all the while opposed by teams of highly skilled lawyers representing the defendant airlines. Class counsel conducted nearly 250 depositions and absorbed the resulting costs for court reporters, travel, witness fees, and living expenses. They assembled and analyzed hundreds of thousands of documents. Class counsel developed sophisticated computer models and display boards for evidence presentation. They retained nationally-known jury and courtroom consultants. They outfitted the courtroom with computers and television and data monitors. Class counsel also appeared at more than 30 pretrial hearings, and underwent difficult and protracted settlement negotiations while simultaneously preparing for trial. This work required time, expense, and great skill, all to the class's benefit.

Based on the foregoing, the Court finds without hesitation that class counsel are well-deserving of a full one-third of this recovery as attorneys' fees and costs. Several objectors complain the attorneys will receive more from the settlement than will any individual class member; but this observation does not cut against payment of the lawyers' fees. This class consists of approximately 34,000 members and virtually any number divided by 34,000 will appear to be small. Nevertheless, nearly 70 percent of an $86 million recovery will be paid to class members. The Court notes that in the absence of vigorous and competent class counsel, there would be no recovery for the plaintiffs at all.

The Court, however, denies class counsels' request for a portion of any interest earned on the settlement sum. All interest earned on the sums held in trust for the class are reserved to the class.

### III. *Conclusion*

Based on the files, records, and proceedings herein, IT IS ORDERED that:

1. The proposed settlement and plan of allocation are approved, except as provided in footnote 5 and the accompanying Orders.

2. Class counsels' application for attorneys' fees and expenses is granted, except as set forth herein.

---

**6.** The Court notes that counsel for plaintiff American Society of Travel Agents, Inc. ("ASTA"), appear to be an exception to the above statements: During the case, ASTA paid its counsel an hourly fee. The final fee petition reflects this fact: ASTA will be reimbursed the exact amount of its counsel fees and costs, with no multiplier or enhancement. These ASTA attorneys' fees are part of, and not in addition to, the one-third of the recovery fee request.