**Mary Jane KERR–SELGAS, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

Civil No. 92–2890 (JAF).

United States District Court,
D. Puerto Rico.

July 1, 1997.

Judith Berkan, Rosalinda Pesquera, Charles Hey–Maestre, San Juan, PR, for Plaintiff.

Jorge L. Capo–Matos, O'Neill & Borges, San Juan, PR, for Defendant.

### OPINION AND ORDER

FUSTE, District Judge.

A jury found American Airlines, Inc. and Whadzen Carrasquillo liable for sexually discriminating against plaintiff, Mary Jane Kerr–Selgas. Upon plaintiff's motion for reinstatement to her previous position as a cargo sales account executive at American Airlines, we ordered the reinstatement of plaintiff to her previous position at American Airlines. The First Circuit reversed this court's order, and remanded the case for a determination after a full and complete hearing on the contested issue of reinstatement. *Mary Jane Kerr Selgas v. American Airlines, Inc.,* 104 F.3d 9 (1st Cir.1997). A hearing was held from May 28 to May 30, 1997.

■ Title VII provides for equitable remedies such as reinstatement and back pay. 42 U.S.C. § 2000e–5(g) (1991). We have discretion to fashion whatever remedy is necessary to compensate fully a plaintiff "in a manner that suits the specific facts of the case; this discretion includes the selection of the elements which comprise the remedial recovery." *Id.* at 13.

■ After the benefit of a three-day-long hearing, in which both parties had ample opportunity to present evidence bolstering their respective arguments, we find that there is presently no credible and reliable evidence that Ms. Kerr is fit to resume her duties at American Airlines. We can only rely on the evidence at trial regarding plaintiff's health, which does not support her reinstatement request.

At trial, plaintiff presented evidence of her inability to work due to her psychological condition. A month after the conclusion of trial, Ms. Kerr, still unable to maintain gainful employment, requested this court to order American Airlines to reinstate her in order to continue benefitting from the company's health insurance coverage. At the time, we ordered defendant to provide the insurance coverage until we resolved the issue of reinstatement. Eight months later, plaintiff's treating psychologist, Carlos Velázquez, submitted to this court a sworn statement in which he stated that Ms. Kerr was currently capable of going back to her previous job at American Airlines. Relying on this evidence, we ordered plaintiff's reinstatement.

■ The hearing made it quite evident to this court that Mr. Velázquez had been less than forthright with us. In his sworn statement, Mr. Velázquez swore that he shortly expected to obtain a doctoral degree from Newport University, when in reality he was no longer a candidate. Second, Mr. Velázquez unjustifiably interfered with defendant's psychological evaluation of plaintiff. In preparation for the reinstatement hearing, the parties agreed that Ms. Kerr would be examined by Dr. Carol Romey, who outlined for plaintiff the tests to be administered and the clinical interviews planned. On the morning of April 12, 1997, Mr. Velázquez administered the Minnesota Multiphasic Personality Inventory Test (MMPI) to Ms. Kerr, knowing that later that same day Dr. Romey was going to administer the MMPI to plaintiff. At the hearing, Dr. Romey testified that this intervention was not only inappropriate but professionally unjustified as well. Upon hearing of defendant's psychological evaluation, Ms. Kerr suddenly resumed her visits to Mr. Velázquez. On the record, we note no psychodiagnostic reason for resuming treatment. It appears that Mr. Velázquez resumed treatment to coach plaintiff and administered the MMPI as a practice test. Administration of these tests in tandem contaminated the results of both tests, rendering Dr. Romey unable to evaluate plaintiff objectively. Mr. Velázquez' deceptive behavior only serves to erode his credibility. Those who come before us requesting equitable relief must come with clean hands, including a party's expert.

Other facts seriously undermine Mr. Velázquez' sworn testimony. In his affidavit, Mr. Velázquez concluded that plaintiff was fit to return to work based on a "series of

tests." *See Defendant's Hearing Exhibit No. 5.* In a letter dated May 9, 1997, Mr. Velázquez reaffirmed his position that Ms. Kerr is able to return to work based principally on his clinical observations; the psychometric and projective tests he administered did not challenge his observations. Although Mr. Velázquez had been seeing plaintiff since December of 1993 for a severe depression, he first administered an MMPI on December 6, 1994, coincidentally two days before his sworn statement was signed. And as stated above, he again administered an MMPI on April 12, 1997, immediately before Dr. Romey's evaluation. The MMPI results generated a profile of plaintiff that does not squarely correspond with Mr. Velázquez' conclusion that Ms. Kerr is able to work. We have no evidence in his progress notes that he considered these results and ruled out any of the disorders that the MMPI indicated had to be ruled out. In fact, his progress notes are of scant aid in determining his diagnosis and treatment of plaintiff: Fragmented sentences, mentioning of personal names, isolated comments by plaintiff.

Mr. Velázquez has also been inconsistent in his position. To this court he has sworn that since December 1994, plaintiff is able to carry out her duties as an account sales executive; yet in June 1996, he stated to defendant's health insurance company that plaintiff was under his care for a severe recurrent depression. Despite the fitness conclusion, according to Mr. Velázquez' progress notes, plaintiff continued to visit him until July 1996. It also appears that plaintiff continued taking Tofranil, although at the hearing, Ms. Kerr testified that she had discontinued taking the drug in 1994. *See Defendant's Hearing Exhibit 10A. Mr. Velázquez' progress notes dated 2/8/95. 3/21/95. and 11/28/95.* Tofranil is indicated for the relief of symptoms of depression. *See Physicians' Desk Reference* 854 (50th ed. 1996). At the hearing, Ms. Kerr clarified that Dr. Carmen Cuevas, who was not providing psychiatric therapy at the time, prescribed her medication since Mr. Velázquez was not licensed to do so. Nonetheless, apparently Mr. Velázquez was aware of what medications plaintiff was taking when he made his fitness determination.

After the in-depth hearing, we find that Ms. Kerr is currently unable to go back to her previous job at American Airlines. There is at this juncture insufficient evidence of plaintiff's full recovery or present status of her severe depression extensively documented in this record since the trial.

We also find that the tension and antagonism between the parties would preclude plaintiff from performing her job effectively were she reinstated. *See Shore v. Federal Exp. Corp.,* 777 F.2d 1155, 1159 (6th Cir. 1985) ("[t]he hostility which unfortunately exists between the parties precludes the possibility of a satisfactory employment relationship"). The tension and antagonism that exists between the parties was palpable during the testimony of each witness, throughout the three days that lasted the reinstatement hearing. In the past, Ms. Kerr had problems with two cargo services employees, Luis Ramírez and Judy Rosario. At the hearing, these two employees unreservedly expressed through their demeanor and testimony the resentment that they still harbor against plaintiff and that would define their professional relationship. We observed Ms. Kerr's nonverbal responses to the testimony of these witnesses; it became quite obvious to this court that Ms. Kerr is also resentful towards these witnesses. Mr. Ramírez and Ms. Rosario anticipated that they would resign if Ms. Kerr returns to the cargo services office. The other cargo sales employees that testified at the hearing, Jorge Mendoza and Carlos Pina, had no ill-feelings towards plaintiff on a personal level, but were pessimistic as to maintaining a collegial work environment if plaintiff returned to the office.

Mr. Fred Voltaggio, American Airlines Cargo Services Regional Manager, testified that cargo sales employees were at best apprehensive of the prospect of having Ms. Kerr return to work among them. Although he does not feel any animosity towards plaintiff personally, he fears her return would have a disruptive effect on his small work group of four cargo sales account managers, four account representatives, and one secretary. Mr. Voltaggio's testimony was buttressed by the testimony of Dr. Chester

Schriesheim, who, after interviewing the majority of these employees, concluded that they would not welcome Ms. Kerr's reinstatement.

We are cognizant that there have been changes in the small cargo sales division. Whadzen Carrasquillo and Luis del Llano retired from the company. However, Mr. Carrasquillo is now a cargo freight forwarder customer of American Airlines, and Ms. Kerr faces the possibility of dealing with him if she returns to the company.

In sum, we conclude that plaintiff has been made whole through the $1.2 Million award. *Selgas*, 104 F.3d at 12. We are confident that defendant's hefty liability with costs accomplishes the goal of deterring discriminatory conduct by defendant in the future. *Id.* at 12. Plaintiff's request for reinstatement is, therefore, **DENIED.**

**IT IS SO ORDERED.**