**Joseph R. MOORE, Plaintiff,**

v.

**THE UNIVERSITY OF NOTRE DAME, Defendant.**

**No. 3:97 CV 0143 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 30, 1998.

900

R. William Jonas, Jr, Hammerschmidt Amaral and Jonas, South Bend, IN, Richard E. Lieberman, Timothy C. Klenk, Mary Margaret Moore, William J. Wortel, Ross and Hardies, Chicago, IL, for Joseph R. Moore, plaintiff.

Gerald F. Lutkus, John D. LaDue, Barnes and Thornburg, South Bend, IN, William P. Hoye, University of Notre Dame, Notre Dame, IN, Carol C. Kaesebier, University of Notre Dame, Notre Dame, IN, for University of Notre Dame and Robert Davie, defendants.

## MEMORANDUM AND ORDER

SHARP, District Judge.

This cause is before this Court on Plaintiff's Motion for Award of Reinstatement/Front Pay and Plaintiff's Bill of Costs. Plaintiff, Joseph R. Moore (Moore) filed a claim in this Court against The University of Notre Dame (Notre Dame) alleging age discrimination, retaliation, and defamation. Only the age discrimination claim survived summary judgment. The case went to trial in Lafayette on July 9, 1998. On July 15, 1998, after four and one-half hours of deliberation, the Jury found that Notre Dame had violated the Age Discrimination in Employ-

ment Act (ADEA) and awarded Moore back pay in the amount of $42,935.28. Additionally, because the jury determined that Notre Dame's violation of ADEA was wilful, Plaintiff also was awarded liquidated damages in the additional amount of $42,935.28. Judgment must and now does enter in favor of the plaintiff, Joseph E. Moore and against the defendant, Notre Dame in the amount of $85,870.56. Accordingly, the Court now considers Moore's post-trial motions.

A briefing schedule and oral argument were originally set in this Court for consideration of the front-pay issue. The parties subsequently requested the Court to vacate the oral argument date and rule solely on the Briefs. Having duly considered same, the Court now rules as follows.

## I. RELIEF UNDER THE ADEA

■ The remedial scheme for a discriminatory discharge is designed to make a plaintiff who has been the victim of discrimination whole through the use of equitable remedies. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (discussing equitable remedies for Title VII); *Straka v. Francis,* 867 F.Supp. 767 (N.D.Ill. 1994) (stating that ADEA and Title VII are treated similarly regarding available remedies). When confronted with a violation of the ADEA, a district court is authorized to afford relief by means of reinstatement, backpay, injunctive relief, declaratory judgment, and attorney's fees. 29 U.S.C. § 626(b); *McKennon v. Nashville Banner Pub'g Co.,* 513 U.S. 352, 357–58, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995); *see also Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). Additionally, in the case of a willful violation of the Act, the ADEA authorizes an award of liquidated damages equal to the backpay award. 29 U.S.C. § 626(b).[1]

Moore now asks the Court to reinstate him in his former coaching position, or to award five year's front pay in lieu of reinstatement. Notre Dame contends that Moore has received all relief to which he was entitled and

therefore asks this Court to deny Moore's Motion for Reinstatement/Front Pay.

### A. Reinstatement

■ Although reinstatement is the preferred remedy in a discrimination case, it is not always appropriate. The factors which should be considered when determining its propriety include, hostility in the past employment relationship and the absence of an available position for the plaintiff. Civil Rights Act of 1964, § 701 *et seq.,* as amended, 42 U.S.C.A. § 2000e *et seq.; McKnight v. General Motors Corp.,* 973 F.2d 1366, 1370 (7th Cir.1992); *Ward v. Tipton County Sheriff Dept.,* 937 F.Supp. 791 (S.D.Ind.1996). Additionally, under ADEA, when a period for reinstatement is relatively short, such that plaintiff is close to retirement, the strong preference in favor of reinstatement is neutralized by the increased certainty of potential loss of pay permitting consideration of a front pay award. *See McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), overruled on other grounds by *Coston v. Plitt Theatres, Inc.,* 860 F.2d 834 (7th Cir.1988). *See also, Chace v. Champion Spark Plug Co.,* 732 F.Supp. 605 (D.Md.1990).

#### 1. Hostility

■ The decision to reinstate a discriminatorily terminated employee is consigned to the sound discretion of the district court which should not grant reinstatement "where the result would be undue friction and controversy." *McKnight v. General Motors Corp.,* 908 F.2d 104, 115 (7th Cir.1990); *Wilson v. AM General Corp.,* 979 F.Supp. 800 (N.D.Ind.1997) (may consider friction that exists between employer and employee unrelated to discrimination). Evidence that hostility developed between the employer and employee during litigation may also be considered, but is not dispositive. *U.S. E.E.O.C. v. Century Broadcasting Corp.,* 957 F.2d 1446 (7th Cir.1992); *Cassino v. Reichhold Chemicals, Inc.* 817 F.2d 1338 (9th Cir.1987).

1. Pursuant to the jury finding "wilful and wanton" discrimination, Moore is awarded damages

equal to the back pay award.

In the present case, Moore's reinstatement would cause significant friction as well as disruption of the current football program. Moore and Davie, his direct supervisor, are no longer on speaking terms. During trial, sufficient evidence was presented to infer that Moore and Davie would be unable to engage in a workable relationship. Reinstatement in this instance is impracticable. Moreover, even if hostility and undue friction were not a problem, reinstatement is not appropriate in this case.

## 2. Available Position

The Seventh Circuit has also held that reinstatement can reasonably be denied when "someone else currently occupies the employee's former position." *Century Broadcasting,* 957 F.2d 1446 (*quoting Graefenhain v. Pabst Brewing Co.* 870 F.2d 1198, 1208 (7th Cir.1989)). Other Circuits hold similarly. *See e.g., Ray v. Iuka Special Mun. Separate School Dist.,* 51 F.3d 1246, 1254 (5th Cir.1995); *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1157–59 (6th Cir. 1985); *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 119–122 (4th Cir.1983) (holding that reinstatement is not appropriate if it requires bumping or displacing innocent employee in favor of plaintiff). The law is clear. Even if this Court determined that reinstatement is warranted, it is not an appropriate remedy in this case as there is no available position to which Moore could return. Therefore, the Court turns to the more difficult issue of whether front-pay is warranted.

## B. Front Pay

Plaintiff is incorrect in stating that "if the Court rejects Moore's request for reinstatement, it *must* award him front pay." (Pl.'s Mem. at 7) (emphasis added). Front pay is an available remedy under ADEA, however, such an award remains discretionary with court. *Williams v. Pharmacia Opthalmics, Inc.,* 926 F.Supp. 791 (N.D.Ind. 1996), *aff'd,* 137 F.3d 944 (7th Cir.1998); *Downes v. Volkswagen of America, Inc.,* 41 F.3d 1132, 1141 (7th Cir.1994); *Tennes v. Commonwealth of Massachusetts Dept. of Revenue,* 944 F.2d 372, 381 (7th Cir.1991); *Drago v. Aetna Plywood, Inc.,* No. 96 C 2398, 1998 WL 474100 (N.D.Ill. Aug.3, 1998). The Seventh Circuit has defined front pay as "a lump sum ... representing the discounted present value of the difference between the earnings (an employee) would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis, inferior, employment." *Century Broadcasting,* 957 F.2d 1446, 1463 n. 18 (quoting *McKnight,* 908 F.2d 104, 116). *See also, Downes,* 41 F.3d 1132, 1141, n. 8. Such a remedy may especially be indicated when the plaintiff has no reasonable prospect of obtaining comparable employment or when the time period for which front pay is to be awarded is relatively short. *Inks v. Healthcare Distributors of Indiana, Inc.,* 901 F.Supp. 1403 (N.D.Ind.1995). *See e.g., Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796 (8th Cir.1994) (front pay appropriate when employee is nearing retirement age); *Duke v. Uniroyal, Inc.,* 928 F.2d 1413 (4th Cir.1991); *Linn v. Andover Newton Theological School, Inc.,* 874 F.2d 1 (1st Cir. 1989); *Stratton v. Department for the Aging for the City of New York,* 922 F.Supp. 857 (S.D.N.Y.1996) (all holding similarly). The court determines the amount of front pay to award depending on whether:

1. the plaintiff has a reasonable prospect of obtaining comparable employment;

2. the time period for the award is relatively short;

3. the plaintiff intends to work or is physically capable of working; and

4. liquidated damages have been awarded.

*Williams,* 926 F.Supp. 791, 796 (finding an award of front pay in Title VII context proper and consistent with the 1991 amendments). Front pay is awarded for a reasonable period of time, until a date by which the plaintiff, using reasonable diligence, should have found comparable employment. *Hutchison v. Amateur Electronics Supply, Inc.,* 840 F.Supp. 612 (E.D.Wis.1993), *aff'd in part, rev'd in part,* 42 F.3d 1037, 1045 (7th Cir. 1994). Moreover, an award must be grounded in available facts, acceptable to a reasonable person and not highly speculative. *Downes,* 41 F.3d at 1142. It cannot be based simply on a plaintiff's own stated intentions

with regard to how long he or she would have worked. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 65 F.3d 562, 574 (7th Cir.1995).

Notre Dame contends that Moore is not entitled to front pay because 1) evidence acquired by Notre Dame after Moore's discharge would have led to his discharge based on legitimate, nondiscriminatory reasons, 2) Moore's award of liquidated damages has already made him whole, and 3) Moore has failed to make reasonable efforts to mitigate his damages.

### 1. Award of Liquidated Damages

 The fact that Moore is entitled to damages based on the jury's finding of a wilful violation does not conclusively preclude front pay. Front pay may be less appropriate when liquidated damages are awarded. *Id.* (emphasis added); *Hybert v. Hearst Corp.,* 900 F.2d 1050, 1056 (7th Cir.1990) (liquidated damages are a relevant consideration in determining *whether and how much* front pay to award). Authority clearly states that liquidated damages is *one* factor to be considered in awarding front pay and does not stand for the proposition that front pay and liquidated damages may never be awarded to the same plaintiff. *Century Broadcasting,* 957 F.2d 1446, 1450; *McNeil,* 800 F.2d 111, 118; *Graefenhain,* 870 F.2d 1198, 1205. Furthermore, an award of front pay, constituting an estimate of what the employee might have earned had he been reinstated at the conclusion of trial is necessarily speculative, this speculative aspect should not deter courts from fashioning awards that accomplish ADEA's goal of making a wronged employee whole. *Selgas v. American Airlines, Inc.,* 104 F.3d 9 (1st Cir.1997), on remand 977 F.Supp. 100 (D.P.R.1997).

 In the present case, Notre Dame argues that Moore's jury award of $42,935.28 and liquidated damages award of $42,935.28 makes him whole and that further compensation would "be a total award greater than the statute contemplates." *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1232 (7th Cir.1995). The Court disagrees. Moore's 1996–97 annual salary was $79,552.08. Assuming an annual increase of 4%, his 1997–98 salary would have been $82,734.16 and his 1998–99 salary $86,043.53.[2] In addition to loss of salary, Moore also lost several benefits. It is unlikely he will be able to duplicate the benefits and prestige the Notre Dame position provided him. Moreover, as Moore is at or near retirement age, it is unlikely he will find comparable employment at the salary level he enjoyed while at Notre Dame. *Compare, Stratton,* 922 F.Supp. 857 (S.D.N.Y.1996) (finding front pay appropriate in ADEA action, where it was clear from evidence presented at trial that employee, who was now 66 years of age, had no reasonable prospect of obtaining positions similar to that she previously held). The evidence showed that Moore had coached at Notre Dame for nine years and intended to continue in that position until retirement. Moore has been unable to replace his Notre Dame position with a comparable one. He is currently earning $46,600 and working three jobs. In this Court's opinion, the jury award has not "made him whole" and front pay may be appropriate.

### 2. After–Acquired Evidence

Notre Dame also asserts that Moore is not entitled to front pay because Notre Dame Administrators made it clear that had they known of Moore's alleged physical and verbal abuse of players, they would have terminated him immediately. Notre Dame argues that evidence of the alleged abuse was "after acquired" and therefore precludes both front pay and reinstatement.

 What sets an after-acquired evidence case apart from a mixed-motives case like *Price Waterhouse,*[3] or a pretext case like *McDonnell Douglas*[4] is that the articulated "legitimate" reason for terminating the em-

---

**2.** Evidence presented at trial indicated that Moore's annual increase were between 4 and 5%.

**3.** *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

**4.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

ployee was non-existent at the time of the adverse decision and could not possibly have motivated the employer to the slightest degree. *Delli Santi v. CNA Ins. Companies*, 88 F.3d 192 (3d Cir.1996). Furthermore, "[W]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." ADEA, 29 U.S.C. § 621 *et seq.*; *McKennon*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852; *Moos v. Square D Co.*, 72 F.3d 39 (6th Cir.1995); *Coleman v. Keebler Co.*, 997 F.Supp. 1102 (N.D.Ind.1998); *Vandeventer v. Wabash Nat. Corp.*, 887 F.Supp. 1178 (N.D.Ind.1995). It is this Court's opinion that Notre Dames argument fails on both points.

First, the after-acquired evidence doctrine does not bar front pay to a discharged employee whose alleged wrongdoing was known to the employer at the time of the discharge and was asserted as being a reason for the discharge. *Delli Santi*, 88 F.3d 192, 205. It is this Court's opinion that Defendant's knowledge of Moore's coaching behavior does not fall within the ambit of after-acquired evidence as set forth in *McKennon*. Moore coached football at Notre Dame for nine years. Davie knew of, and in fact argued that Moore's behavior was one of the reasons for his termination. The record is replete with such evidence. (Trial Tr. July 10, 1998 p. 18, 19, 30–38). The jury apparently rejected this argument. Based on its defense at trial, Notre Dame cannot now claim that this "legitimate" reason was non-existent at the time of the adverse decision and could not possibly have motivated it to the slightest degree. *Delli Santi*, 88 F.3d 192, 205–06.

Notre Dame has also failed to establish that Moore's alleged wrongdoing was of such severity that he in fact would have been terminated on those grounds alone. Football is an aggressive sport. Coaching a winning team requires a degree of "killer instinct." Notre Dame's blanket assertion that if certain administrators had known of Moore's alleged abuse of players, Moore would have

been immediately fired is insufficient to prove that such would have actually occurred. This assertion is nothing more than an excuse made after the fact. Additionally, this Court will not speculate, like defendant does, as to the reason the jury did not award a large amount of back pay. (Def.'s Mem. at 4). An award of back pay less than requested does not necessarily mean the jury concluded Moore would have been terminated for nondiscriminatory reasons and it does not therefore preclude front pay. *See Curtis v. Electronics & Space Corp.*, 113 F.3d 1498, 1504 (8th Cir.1997); *Downes*, 41 F.3d 1132, 1143–44 (7th Cir.1994). Accordingly, this Court finds Defendant's after-acquired evidence argument without merit.

### 3. Failure to Mitigate

Notre Dame finally argues that Moore is not entitled to front pay because he failed to undertake reasonable efforts to mitigate his damages. This Court disagrees. Generally, an ADEA plaintiff satisfies the mitigation of damages requirement that he use "reasonable diligence in attempting to secure employment" by demonstrating his commitment to seeking active employment and by remaining ready, willing and able to work. However, a plaintiffs duty to mitigate his damages is not met by using reasonable diligence to obtain any employment, rather the employment must be comparable employment. *Finch v. Hercules Inc.*, 941 F.Supp. 1395 (D.Del.1996). The Seventh Circuit has defined "comparable work" as a position that affords "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status" as the previous position. *Best v. Shell Oil Co.*, 4 F.Supp.2d 770 (N.D.Ill.1998) (quoting *Hutchison*, 42 F.3d at 1044). The goal of mitigation is to prevent the plaintiff from remaining idle and doing nothing. Furthermore, an employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so. *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228 (6th Cir.1996); *Ford v. Nicks*, 866 F.2d 865 (6th Cir.1989). Furthermore, a claimant has no obligation to accept lesser employment . . . or relocate to

a new community. *See, e.g., Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982); *Coleman v. City of Omaha,* 714 F.2d 804, 808 (8th Cir.1983); *Glass v. IDS Financial Services, Inc.,* 778 F.Supp. 1029 (D.Minn.1991); *Raimondo v. AMAX, Inc.,* 843 F.Supp. 806 (D.Conn.1994).

 When evaluating the reasonableness and duration of a job search a court may consider the plaintiff's background and individual characteristics. *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983) (for example, older claimants need not exert same effort as younger claimants); *Sellers v. Delgado College,* 902 F.2d 1189, 1193 (5th Cir.1990). Moreover, it is the defendant's burden to prove that a plaintiff has failed to discharge his duty. *Smith v. Great American Restaurants, Inc.,* 969 F.2d 430 (7th Cir.1992); *Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 125 (2d Cir.1996). In the present case, Notre Dame has not met this burden. Moore sought and obtained employment shortly after his discharge. He currently works at three different jobs. The fact that he did not accept a position at Cornell does not indicate a failure to mitigate. That position offered a $40,000 salary, significantly less than Moore's former salary, and involved a tenuous situation where the head coach was seeking other employment. Nor does the fact that Moore did not apply for certain positions mentioned by defendant indicate a failure to mitigate. *Compare Buchholz v. Symons Mfg. Co.,* 445 F.Supp. 706 (E.D.Wis.1978) (62–year–old salesman, who was discharged in violation of ADEA was not required to relocate for three years of employment until planned retirement as a reasonable effort to mitigate damages). Moore is presently sixty-six years old. The options available to him are not as great as those available to someone younger. Moore has demonstrated his willingness to work, but, the chances of finding "comparable work" as defined by the Seventh Circuit, *supra,* are slim. It is this Court's opinion that Moore used reasonable diligence in attempting to obtain employment.[5]

### 4. Summary

 The purpose of front pay under the Age Discrimination in Employment Act is to ensure that a person who has been discriminated against on the basis of age is made whole, not to guarantee every claimant who cannot mitigate damages by finding comparable work an annuity to age 70. *Anastasio v. Schering Corp.,* 838 F.2d 701 (3d Cir.1988). Furthermore, the risk of non-continuity of future employment in a "volatile" field must be considered in determining an award of front pay, *Price v. Marshall Erdman & Assoc., Inc.,* 966 F.2d 320, 327 (7th Cir.1992); 901 F.Supp. 1403, 1408, and the Court has considered this fact.

 Defendant's argument that front pay is too speculative when the plaintiff's profession has a high turnover rate (Def.'s Mem. at 12) does not preclude a front-pay award. *See Century Broadcasting,* 957 F.2d 1446 (front pay improperly denied on grounds employment in industry was tenuous). In this case, such an award is not "highly speculative." The Court has solid evidence concerning Moore's annual salary and the number of years he hoped to continue his employment. While Moore asserts that five years front pay is warranted, this Court disagrees. The evidence presented at trial establishes that Moore expressed a desire to work two more years and then retire. There was no guarantee that Davie would remain at Notre Dame longer than his current contract or that Moore would indefinitely remain in Davie's employ. The evidence also suggests that Moore and Davie had philosophical differences which may have lead to a parting of the ways. With all evidence considered, the Court finds an award of two years front pay sufficient. The front pay is calculated as follows:

Had Moore remained at Notre Dame his total 1998 salary would have been $84,388.84.[6] Subtracted from this amount is

---

5. This Court does not consider what measures, if any, plaintiff has taken to seek employment since the start of trial.

6. Coaching contracts run from July 1 to June 30 each year. Therefore Moore's 1998 salary is based on six months at an annual rate of $82,734.16 plus six months at an annual rate of

Moore's annual salary from his present employment. Moore testified that he currently earns $1,600 for his services as assistant football coach at Cathedral Preparatory School, $15,000 for his work with the Baltimore Ravens, and $30,000 from his work with Tollgrade Communications. His total current yearly earning amount is therefore $46,600.[7] The difference between Moore's Notre Dame salary and his current salary is $37,788.84 per year. This amount is multiplied by a period of two years and yields a total of $75,577.68. Because the Court is not including an additional amount for lost benefits and is not factoring in any increase for the second year, no discounting of the front pay award is warranted. *See Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 882 (2d Cir.1997); *see e.g. Gusman v. Unisys Corp.*, 986 F.2d 1146, 1147–48 (7th Cir.1993). Thus, the total front pay award equals $75,577.68 plus post judgment interest.[8]

## II. PLAINTIFF'S COSTS AND FEES

A plaintiff who has prevailed on the merits of his ADEA claim is entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. § 626(b). "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (1965 & Supp.1998) (as incorporated by 29 U.S.C. § 626(b)).

■■■ Procedurally, [t]he party seeking attorney's fees has the burden to prove that its request for fees is reasonable. To meet

its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed. In a statutory fee case, the party opposing the fee award then has the burden to challenge by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. The district court cannot decrease a fee award based on factors not raised at all by the adverse party. Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Jaffee v. Redmond*, 142 F.3d 409, 412 (7th Cir.1998).

### A. Attorney Fees

■■■ The calculus in determining the amount of attorney's fees a prevailing party is entitled to receive in a civil rights action is well-settled. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citing *Hensley*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40). This estimate is called the "lodestar." *McNabola v. Chicago Transit* Authority, 10 F.3d 501, 519 (7th Cir. 1993); *Wilson v. AM General Corp.*, 979 F.Supp. 800, 804; *Morimanno v. Taco Bell*, 979 F.Supp. 791, 796 (N.D.Ind.1997). "Adjustment to that fee then may be made as necessary in the particular case." *Blum*, 465 U.S. at 888, 104 S.Ct. at 1544; *Hensley*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40. Accordingly, district courts

$86,043.53. Additionally, Plaintiff contends that annual "bowl bonuses" should be factored in to his award. The Court finds this bonus speculative and inappropriate for consideration.

7. The Court rejects Defendant's argument to include the one-time signing bonus in calculating annual salary. Similarly, the Court rejects Plaintiff's argument that he could have worked with Tollgrade while still employed at Notre Dame and that therefore the Tollgrade earnings should not count.

8. Post-judgment interest is recoverable pursuant to 28 U.S.C. § 1961 which states, in relevant part:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

*See also, Tennes v. Commwealth of Mass., Dept. of Revenue*, 745 F.Supp. 1352, 1360 (N.D.Ill.1990) (stating that a prevailing plaintiff in an age discrimination suit under the ADEA is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961).

have "discretion in determining the amount of the fee award." *Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941.

As the prevailing party, Moore has petitioned this Court for 2,954.95 hours of attorney time equaling $511,910.25 in fees and $27,999.66 in expenses. This total is based on an hourly rate of $290 for plaintiff's lead attorney, $165 for senior associates, $115 and $105 for junior associates and $85 for paralegals. Notre Dame objects to the Plaintiff's Motion for Fees and Costs on numerous and inter-related grounds. After wading through all of the arguments, this Court finds as follows.

### 1. Refusal to Settle

 Notre Dame contends this request for fees and expenses should be denied in its entirety because Moore unreasonably refused to settle. (*See* Def.'s Mem. in Opp'n at 5–8). Moore counters that Notre Dame "made no effort to resolve the case." (Pl.'s Reply Mem. at 16) (*See also,* Aff. of Lieberman; Aff. of Klenk; Aff. of Moore). Plaintiff claims that the only settlement attempt came during the course of court-ordered discussions with the Magistrate Judge. During those discussions the Magistrate recommended $130,000 for settlement. Plaintiff's lawyers told the Magistrate that they were "flexible on settlement; however, they needed a higher number than that to fairly compensate Moore and provide some reimbursement for their legal fees and costs." (Pl.'s Reply Mem. at 16).

 Notre Dame is correct that when a plaintiff has refused a settlement offer, a comparison between what the plaintiff sought and what he received is valid. Attorneys are supposed to know a good offer when they see it; if they cannot convince the client, they risk having their fees reduced. *Diettrich v. Northwest Airlines, Inc.,* 967 F.Supp. 1132 (E.D.Wis.1997). It is true that the amount ultimately awarded Moore by the jury was less than the amount recommended by the Magistrate. However, the amount of front pay here awarded is to be noted. Additional-

ly, Plaintiffs always cast the damage net as broadly as possible. For their clients, they should be trying to recover as much in damages as possible. *Id.*

Moreover, the case cited by defendants, *Vocca v. Playboy Hotel of Chicago, Inc.,* 686 F.2d 605, 607–08 (7th Cir.1982), is not dispositive here. In *Vocca,* the plaintiff's lawyers delayed settlement for the sole purpose of enhancing fees. That case never went to trial. In comparison, Moore's case did go to trial and the jury found in his favor. It is clear from the record that neither party vigorously pursued settlement and no formal settlement offer was made in this case. Therefore there is nothing to compare.[9] No effort was made to use Rule 68 FRCP.

### 2. Reasonable Hours

Notre Dame next argues that the requested fees should be substantially reduced based upon the large number of hours and costs not reasonably expended on the litigation. Specifically, Notre Dame challenges the time spent on media efforts, intra-office conferences, unrelated legal services provided to plaintiff, excessive conferences with plaintiff, clerical tasks, and efforts spent on irrelevant allegations.

 Unsuccessful but reasonable argument in support of a successful claim may be compensable. *Jaffee,* 142 F.3d 409, 414 (7th Cir.1998). Similarly, ten hours of unsuccessful research may not be compensable in one case, whereas 100 hours may be compensable in another. The key is whether those hours, in the judgment of the district court, were reasonably spent in the context of the entire litigation. *Id.* This Court now has expended more judicial time and resources post verdict than expended in getting prepared for trial and is not compelled to walk through every detailed dispute here less this case become a full-time, long-term, all consuming event. The Court takes notice of these objections and will deal with them in the summary section, *infra.*

9. The Court does not mean that it now cannot consider any amounts requested by Plaintiff, either in the Complaint or in any future demand.

However, the analysis used is *Vocca* is irrelevant here.

### 3. "Reasonable" Market Rates

Notre Dame contends that the hourly rates claimed by Moore's attorneys are not reasonable and not properly documented. It asserts that a maximum fee of $175 per hour is the "market rate" that should apply.

■■■■■■ The party requesting attorney's fees bears the burden of substantiating the reasonableness of the hourly rates sought. *Morimanno,* 979 F.Supp. 791, 797; *Estate of Borst v. O'Brien,* 979 F.2d 511, 515 (7th Cir.1992). The Supreme Court has held that the reasonable hourly rates applicable to the labors of attorneys for a prevailing party should be "the prevailing market rate[ ] in the relevant community." *Blum,* 465 U.S. at 895, 104 S.Ct. 1541. Yet, the Supreme Court also cautioned that:

> [m]arket prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely. The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate. But the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses.

*Id.* In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate. "[L]awyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." *Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 568 (7th Cir.1992). "It is the Court's job to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *See Gusman,* 986 F.2d 1146, 1150; *Pressley v. Haeger,* 977 F.2d 295, 299 (7th Cir.1992); *Barrow v. Falck,* 11 F.3d 729 (7th Cir.1993). However though *Gusman* states that "the best measure of the cost of an attorney's time is what that attorney could earn from paying clients," the opinion also made it clear that the attorney's billing rate is "a presumptive rather than a dispositive figure." *Gusman,* 986 F.2d at 1150. This presumption can be overcome.

Moore's attorneys have provided redacted examples of a few bills to other clients. These are only marginally helpful here.[10] Based on the examples provided, the Court does not know what type of litigation was billed for or whether those cases were similar to present case. The Court is not persuaded that the hourly rates claimed by the Plaintiff accurately reflect the "reasonable market rate."

■■■■■ Additionally, Notre Dame argues that Moore should have obtained local counsel as opposed to a high priced Chicago firm. Mr. Moore had every right to secure Chicago based counsel. Furthermore, sufficient evidence was provided that obtaining local counsel in this case was virtually impossible. The Seventh Circuit addressed the issue of determining reasonable attorney's fees for out of town lawyers in *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982). The Appeals Court stated:

> If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion,

---

10. Additionally, the Court notes that of the employment discrimination cases cited in Plaintiff's Reply Memorandum in support of high fee awards only two are from this circuit. Two are California state law cases, one is a California district court and two are from other circuits. These cases are not conclusive.

might allow only an hourly rate which local attorneys would have charged for the same service. On the other hand, there are undoubtedly services which a local attorney may not be willing or able to perform. The complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally.

This case was a straight forward Age Discrimination case, however, it involved a high-profile plaintiff and defendant. The Court has included this factor in its analysis. By referring to the case as "a standardized set of age discrimination claims with celebrity parties involved" (Ct.'s Mem. and Op. June 12, 1997) this Court did not mean that it was a run-of the-mill, or no-brainer case that required no specific expertise. *Compare, American Knights of the Ku Klux Klan v. City of Auburn, Indiana,* 179 F.R.D. 228, 234–35 (N.D.Ind.1997). The Court's intent was simply to focus the parties on the real issue.

 Defendant relies heavily on the Seventh Circuit's decision in *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205,* 90 F.3d 1307 (7th Cir.1996). The facts in this case are distinguishable. In *People Who Care,* the defendant failed to present evidence contradicting the per hour rate claimed by plaintiff. 90 F.3d at 1313. Because the defendant provided no evidence other than an affidavit regarding paralegal rates, the court found the evidence "unrebutted" and therefore found no reason to question the claimed rates. *Id.* The circumstances are quite different here. Notre Dame cites numerous examples of prevailing rates for employment discrimination litigation. In fact, it provides the court with a chart listing all similar recent litigation and the fees charged in each case. (Def.'s Mem. in Opp'n, App. B.).[11] Rates awarded in similar cases are clearly evidence of an attorney's market rate. *People Who Care,* 90 F.3d 1307, 1312; *accord Tolentino v. Friedman,*

46 F.3d 645 (7th Cir.1995). While such information is helpful here, the Court's decision must still be "case specific" and based on the facts of this case, the Court is not persuaded that the fees claimed are reasonable.

### 4. Inadequate Documentation

Notre Dame asserts that the billing records are "rife with cluster billing time entries" which is not adequate documentation under the law of this Circuit. (Def.'s Mem. in Opp'n at 4). It also contends that the fee request is seriously inflated. *Id.* at 24.

 It is this Court's opinion that some documentation is not sufficiently detailed. Moreover, there are charges that involve "unrelated legal services provided to plaintiff, excessive conference time and media related time." This Court has attempted to sort through the contentions and cross-contentions on attorney fees and has determined that an across the board 20% reduction should enter for prosecuting near frivolous claims and for much duplicative effort. The most that can be said for the Plaintiff's attorney fee claim is that many doubtful and exaggerated items have been included. The 20% reduction will accommodate same.

### 5. Travel and Other Expenses

 Moore includes the amount of $27,999.66 in expenses in his request for attorney fees. These expenses are for travel and lodging ($9,635.01), fax charges ($1,280.96), telephone ($1,183.55), computer assisted research ($11,358.39), delivery charges ($1,250.48) and local counsel attorney fees ($2,350.80).

 Defendant's contention that all travel expenses should be excluded because Moore chose out-of town and not local counsel is wholly without merit. Travel and meal expenses are the sort of things that a lawyer

---

11. Examples of fees allowed in recent cases: *Connolly v. National School Bus Service, Inc.,* 992 F.Supp. 1032 (N.D.Ill.1998) (reduced fees of $320 and $220 for Chicago Title VII attorneys because **not** market rate); *Garner v. Wade,* No. 97 C 4118, 1998 WL 474137 (N.D.Ill. Aug.6 1998) (§ 1983 claim for fees of $200 and $135 reasonable); *Morimanno,* 979 F.Supp. 791 ($125—$225 Fort Wayne, Ind. area rate for civil rights defense work); *American Knights of Ku Klux Klan v. City of Auburn,* 179 F.R.D. 228 (N.D.Ind.1997) ($200 in First Amendment case); *Wilson,* 979 F.Supp. 800 ($175 in South Bend, Ind. employment discrimination case); *Diettrich,* 967 F.Supp. 1132 ($200 and $125 for Wisconsin ADEA claim).

includes with a bill for professional services. *Missouri v. Jenkins,* 491 U.S. 274, 285–89, 109 S.Ct. 2463, 2470–72, 105 L.Ed.2d 229 (1989) *Calderon v. Witvoet,* 112 F.3d 275 (7th Cir.1997). They are compensable if reasonable.

■■■■■ Computerized legal research is a task generally performed by attorneys, paralegals and law clerks. It is a cost incident to attorneys' fees. *E.E.O.C. v. Sears Roebuck & Co.,* 111 F.R.D. 385, 394 (N.D.Ill.1986). Because it is a tool to make more efficient use of an attorney's time, charges for it are really expenses associated with attorneys' fees. *Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.,* 992 F.Supp. 980, 984 (N.D.Ill.1998); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago,* 38 F.3d 1429, 1441 (7th Cir.1994). However, its use must also be reasonable. An attorney who specializes in employment law should not need large numbers of hours to research on-line. *See generally, Ward v. Tipton County Sheriff Dept.,* 937 F.Supp. 791 (S.D.Ind.1996); *Bakalis v. Board of Trustees, Community College Dist. No 504,* No. 93 C 483,1998 WL 311994 at *3 (ND.Ill. June 5, 1998). This Court is not convinced that $11,358.39 in Westlaw and Lexis research expenses is reasonable here. As for fax costs, attorneys are allowed to take advantage of late 20th century technology in running their practice. *Halderman v. Pennhurst State School & Hosp.,* 899 F.Supp. 209 (E.D.Pa.1995). The same is true for telephone expenses and messenger services. *Robins v. Scholastic Book Fairs,* 928 F.Supp. 1027 (D.Or.1996), *aff'd,* 116 F.3d 485 (9th.Cir.1997); *Johnson v. Mortham,* 950 F.Supp. 1117 (N.D.Fla.1996), *on reconsideration in part,* 173 F.R.D. 313( ). Fees for local counsel are also appropriate if they are properly documented. Here, the statements provided to the Court do not include any explanation of services provided or of hourly rate charged. This is not proper documentation.

■■■■■ The significant inquiry here is whether or not this Court determines that the expenses are reasonable, *Hensley,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, and whether the documentation was adequate.

*Webb v. James,* 967 F.Supp. 320 (N.D.Ill. 1997), *aff'd,* 147 F.3d 617 (7th Cir.1998), *reh'g denied.* This Court's answer is "no" on both counts. Therefore a 20% reduction in the total expenses claimed is appropriate. Accordingly, Plaintiff is entitled to a total of $22,399.73 for attorney expenses.

## 6. Litigation Support

■■■■■ Moore includes an amount of $43,999.71 in expenses for the use of a computerized audiovisual service (Trial Graphix) during trial. Notre Dame claims Moore is not entitled to any recovery for this expense. The court notes that both parties made very extensive use of computers and data projectors during trial which speeded and simplified the presentation of evidence in this hotly contested case. This equipment was regularly used in lieu of other exhibits and litigation support and was very useful. The use of this type of equipment is becoming more commonplace in today's technological judicial world and requests for reimbursement are a relatively new issue in the courts. However, there is sufficient guidance available from which this Court determines that at least part of these costs are recoverable here. *See Comark Communications Inc. v. Harris Corp.,* No. 95–2123, 1998 WL 150946 (E.D.Pa. March 30, 1998), *aff'd,* 156 F.3d 1182, 1998 WL 614579 (Fed.Cir.1998) (patent case awarding $195,854.54 for "litigation support"); *In re Airline Ticket Com'n Antitrust Litigation,* 953 F.Supp. 280, 286 (D.Minn. 1997) (court noted the plaintiffs outfitted the courtroom with computers and television and data monitors and found "without hesitation" they were entitled to at least 1/3 the expenses); *Sears, Roebuck & Co.,* 111 F.R.D. 385, 394 (court reasoned that a "computerized retrieval system performs the work an attorney, paralegal or law clerk would have to perform in its absence" and concluded that "expenses for such systems are more properly considered expenses incidental to an award of attorneys' fees."). Based on the foregoing, the Court determines that Moore is entitled to one-half of the expenses claimed for this highly complex state-of-the-art equipment.

### 7. Summary

The continued acrimony between counsel in this case is extremely disappointing here. It has not and does not serve the interests of either party. This Court might expect better from a first rate Chicago litigation law firm and a great religious institution of higher education. Counsel continues to haggle and split legal hairs over some issues which are completely nonsensical. This Court has waded through the mass of paper filed here post verdict and such is not a pretty sight. The fact remains that plaintiff prevailed on some but not all issues he advanced in the course of this litigation. Two defendants were dismissed in summary judgment as were all supplemental claims. Both parties engaged in "scorched-earth" tactics.

■ The Court finds sufficient merit in defendants challenges to Moore's Petition for fees and expenses. After applying the *Hensley*[12] factors, weighing all of the relevant factors and considering the evidence the court determines the following hourly rates are reasonable for this litigation: $200 for the lead attorney,[13] $150 for senior associates,[14] $100 for "other counsel",[15] and $70 for paralegals.[16] Accordingly, for a total of 2,956.95 hours of attorney time the total amount allowed for attorney fees equals $408,255.50. Pursuant to the Court's findings in section—above, this amount is reduced by 20%. Plaintiff is therefore entitled to attorney fees in the total sum of $326,604.40.

### Fees and Expenses incurred after September 12, 1998

■ Attorney fees incurred in litigating fee issues and post-trial motions are recoverable. *Miller v. Artistic Cleaners*, 153 F.3d 781, (7th.Cir.1998); *see also, Nanetti v. University of Illinois at Chicago*, 944 F.2d 1416, 1421 (7th Cir.1991). Moore requests amount of $30, 469.00 in attorney fees and $615.76 in out of pocket expenses incurred post trial. These fees are similarly reduced as explained *supra*.[17] Therefore, Moore is additionally awarded $23,367.50 in fees and $494.26 in expenses.

### B. Costs

■ Moore has submitted a Bill of Costs in the total amount of $60,139.27. Defendant objects to Moore's bill of costs on several grounds. The Court deals with each below. "[C]osts ... shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d). The costs that may be recovered pursuant to Rule 54(d) are specified in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385, (1987). They include: (1) fees of the clerk; (2) fees for transcripts; (3) fees for printing and witnesses; (4) fees for copies "of papers necessarily obtained for use in the case;" (5) docket fees; and (6) compensation of court-appointed experts and interpreters. 28 U.S.C. § 1920. The losing party must affirmatively demonstrate the prevailing party is not entitled to costs. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir.1991). But, most importantly, in order to award costs to the prevailing party, the court must determine that the expenses are allowable and reasonable, both in amount and necessity to the litigation. *Deimer*, 58 F.3d at 345; *Weihaupt*, 874 F.2d at 430.

### 1. Exemplification and Copying

■ Defendant objects to the amount of $1,663.60 in copying and exemplification costs

---

**12.** *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. These factors are: 1) time and labor required; 2) novelty and difficulty of the questions; 3) skill requisite to perform the legal services properly; 4) preclusion of other employment due to acceptance of this case; 5) customary fee; 6) fixed or contingent fee; 7) time limitations imposed by client or circumstances; 8) undesirability of case; 9) experience and reputation of attorney; 10) results obtained; 11) nature and length of professional relationship with client; and 12) awards in similar cases.

**13.** 787.10 hours × $200 = $157,420.00

**14.** 891.70 hours × $150 = $133,755.00

**15.** 925.00 hours × $100 = $ 92,500.00

**16.** 351.15 hours × $70 = $ 24,580.50

**17.** 9.3 hours at $70 = $651.00; 193 hours at $100 = $19,300.00; 25.10 hours at $150 = $376.50; and 15.20 hours at $200 = $3,040.00.

because Moore has failed to provide any evidence demonstrating that the copies were reasonably necessary. The Seventh Circuit has consistently held that "extra copies of filed papers ... are not necessary but are for the convenience of the attorneys ...". *Independence Tube Corp. v. Copperweld*, 543 F.Supp. 706, 722 (N.D.Ill.1982), *aff'd*, 691 F.2d 310 (7th Cir.1982), *rev'd on other grounds*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Voight v. Subaru–Isuzu Auto., Inc.*, 141 F.R.D. 99, 103 (N.D.Ind. 1992). This Court must determine whether the other copies were "necessarily obtained for use in the case," as provided by § 1920(2); *see also, Baxter Int'l, Inc. v. McGaw, Inc.*, No. 95 c 2723, 1998 WL 102668 at *2 (N.D.Ill. March 3, 1998) Generally, however, when the Court is unable to determine whether the copies in question were reasonably necessary for use in the case, the claim for such costs should be denied. *Baxter*, 1998 WL 102668 at *1; *Voight*, 141 F.R.D. 99, 102; *Arachnid, Inc. v. Valley Rec. Prod.*, 143 F.R.D. 192, 194 (N.D.Ill.1992).

█ It appears from Plaintiff's Exhibit "E" attached to his Bill of Costs, that seven (7) copies of most documents were made. The making of copies of pages of documents for production to plaintiffs in discovery is recoverable. *Baxter*, 1998 WL 102668 at *3. Copies for the court are necessary. One copy for opposing counsel is necessary. While it may be convenient, additional sets of every document are excessive. Given all of the evidence, it is this Court's opinion that one-half of the copies produced were for convenience, not necessity.

█ Defendant also objects to the charge of $.20 per page and claims that $.07 per page was available at large copy firms in Chicago. While the court agrees that $.20 is high for in house charges, $.07 is low. It is also this Court's opinion that $0.15 per page is a fair cost for in-house copying. *See Blackwell v. Cole Taylor Bank*, No., 96 C 0902, 1998 WL 641337 (N.D.Ill. Sept.10 1998); *American Automotive Accessories, Inc. v. Fishman*, 991 F.Supp. at 998. Accordingly, Moore is awarded costs for copying as follows:

Copies of Court Documents = 5744 (reduced by ½) 2872 × $ .15 = $430.80.

Documents Produced to Defendants = 223 × $.15 = $33.45

Documents for Trial Exhibits = 2351 × $.15 = $352.65

Thus the total costs allowed for copies and exemplification is $786.90.

### 2. Travel and Witness Fees

"Witnesses" are considered a cost under 28 U.S.C. § 1920(3). Section 1821(b), however, limits expert witness fee awards under § 1920. It states in relevant part:

> A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821(b) (Supp. IV 1992).

In the present case, Moore claims a fee of $115 for six witnesses and $120 for two. There are no receipts and no breakdown of what these expenses are for. Therefore, the Court awards the total amount of $320 ($40 per day, per witness).

█ Moore also requests $140.00 in fees for the Knapp and Wall depositions. Again, there is no breakdown of expenses, but simply a copy of a check issued for $70 to each. At most, Moore is entitled to the daily statutory fee for these two witnesses. However, neither of these witnesses was ultimately deposed. Moore is not entitled to recover fees associated with depositions that were not taken. *Blackwell*, 1998 WL 641337 at *4; *EEOC v. Sears*, 114 F.R.D. at 624.

█ Notre Dame additionally objects to Moore's request for $767.00 in airfare for witness Justin Hall because there is no verification that the rate paid was the most economical rate paid. This picky argument is unpersuasive. The court does, however, subtract the $75.00 amount charged for "upgrade airfare" as an upgrade was certainly not necessary or economical.

The total charges for witness travel and expenses is accordingly reduced by $825.00. Thus, Moore is awarded a total of $1,109.90 for these charges.

### 3. Deposition Transcripts

 Notre Dame objects to Moores claimed expenses of $12,251.06. Notre Dame's objection is well founded. Transcripts and videotapes are two versions of the same deposition. Moore can recover the cost of one or the other, but not both. *See Commercial Credit Equip. Corp. v. Stamps*, 920 F.2d 1361, 1368–69 (7th Cir.1990) (videotape of deposition qualifies as substitute for stenographic transcript); *Reed–Union Corp. v. Turtle Wax, Inc.*, No. 91 C 5625, 1995 WL 138986 (N.D.Ill. March 24, 1995). Therefore the amount of $3,349.50 for videotapes is deducted from the total. Also, Moore is entitled to costs for only one copy, in whatever form, of each transcript. Three invoices indicate that Moore was charged for and received the "original and one copy." The transcript amount is further reduced by $1,295.45.

 Finally, the court notes that although § 1920 specifically provides for the taxation costs for deposition transcripts, it does not provide for taxing postage and courier costs. In fact, costs such as postage and mail services have been "disallowed on the grounds that such expenses are generally considered overhead, or part of the cost of operating a law firm." *See Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1144 (7th Cir.1994) (postage expenses are part of reasonable attorney's fee under § 1988, as distinct from statutory costs under § 1920); *Apostal v. City of Crystal Lake, Ill. State Police*, 165 F.R.D. 508, 511 (N.D.Ill.1996) (delivery charges not recoverable as costs under § 1920); *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995) ("The overwhelming weight of authority have declined to award costs for courier services, postage, telephone or fax charges"). Accordingly, an additional $60.46 is deducted from the total charges. The total allowable amount is therefore $7,545.65.

**18.** Moore alternatively requested this expense under attorney fees previously considered above.

### 4. Service of Process Charges

 Notre Dame objects to fees for service of process on Wall and Knapp in the amount of $60.00. As noted in Section 2 *supra*, these witnesses were never deposed. Accordingly, this expense is not allowable. *Blackwell*, 1998 WL 641337 at *4; *EEOC v. Sears*, 114 F.R.D. at 624.

### 5. Miscellaneous

 Moore claims $43,999.71 in costs incurred for the use of "Trial Graphix," a computerized litigation support system.[18] Defendant is correct. This item may not be taxed as a cost. *See Cefalu* 1998 WL 409690 at *11 (N.D.Ill.1998). There is no statutory authority for awarding these expenses as costs. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble*, 924 F.2d 633 (7th Cir. 1991).

### 6. Summary

Based on the computations set forth *supra*, Moore is hereby awarded costs in the total amount of $9,672.45.

### *CONCLUSION*

For the preceding reasons it is hereby ordered that Plaintiff's Motion for Reinstatement is **DENIED**. Plaintiff's Motion for Award of Front Pay is **GRANTED**. Plaintiff is awarded front pay in the amount of $75,577.68 plus post-judgment interest.

It is further ordered that Plaintiff's Motion for Costs and Fees is **GRANTED** in part as modified herein. Plaintiff is awarded costs in the total amount of $9,672.45. Plaintiff is also awarded attorney fees and expenses in the total amount of $394,865.74.

Finally, pursuant to jury verdict, the Plaintiff is awarded $42,935.28 in back pay and an additional $42,935.28 in liquidated damages. **IT IS SO ORDERED.**

*See* (Pl.'s Mem. in Supp. at 18, n. 10)